UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00050-GNS-HBB

ESTATE OF JEREMY MARR, PLAINTIFFS
by and through its Administrator,
JOANNA MARR, et al.

v.

CITY OF GLASGOW, et al. DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendants' Motion to Dismiss (DN 11). This motion is ripe for adjudication. For the reasons that follow, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

This action arises from the attempt by the Glasgow Police Department ("GPD") to apprehend Jeremy Marr ("Marr"). (Compl. ¶¶ 12-24). Three officers allegedly forced Marr to the ground with their knees in his back and tased him several times, leading to his death. (Compl. ¶¶ 15-18). Plaintiffs, Marr's Estate and his minor son, assert claims for violation of Marr's constitutional rights under 42 U.S.C. § 1983, as well as a variety of state tort law claims. (Compl. ¶¶ 38-71). Defendants in this case are the City of Glasgow ("Glasgow"); GPD; Officer Guy Joseph Turcotte ("Turcotte"), individually and in his official capacity as a Glasgow Police Officer; Hayden Phillips ("Phillips"), individually and in his official capacity as a former Glasgow Police Officer; and Cameron Murrell ("Murrell"), individually and in his official capacity as a Glasgow Police Sergeant. (Compl. ¶¶ 3-9).

1

Plaintiffs allege that the GPD responded to a call from Marr's residence on April 14, 2020. (Compl. ¶ 11, DN-1). Upon arrival, Marr remarked that he believed people were trying to murder him. (Compl. ¶ 12). Turcotte, Phillips and Murrell (collectively "GPD Officers") spoke with Marr who informed them that he had a knife on his person. (Compl. ¶¶ 12, 14). Marr indicated he was willing to hand the knife to the GPD Officers, but was instructed to leave it in his pocket. (Compl. ¶ 14). The GPD Officers grabbed Marr and pushed him to the ground, restraining his arms above his head and straddling him. (Compl. ¶¶ 15, 17). Marr was then tased eight to ten times in his back and was repeatedly struck by an officer's knee either in his side or on some portion of the lower half of his body. (Compl. ¶¶ 18, 20). When the GPD Officers rolled Marr onto his back he was unresponsive. (Compl. ¶¶ 23-24). Marr was then transported to the emergency room where he was pronounced dead upon arrival. (Compl. ¶¶ 23-24). Plaintiffs assert that at no point during the interaction did Marr pose a threat to anyone in the vicinity of the incident. (Compl. ¶ 16).

Plaintiffs assert claims against the GPD, Glasgow and the GPD Officers in their official and individual capacities. (Compl. ¶¶ 38-71). In their motion, Defendants seek dismissal of these claims. (DN 11).

## II. JURISDICTION

Jurisdiction for the federal law claims is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims through supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

## III. DISCUSSION

### A. GPD & Official Capacity Claims

"If a defendant lacks the capacity to be sued, [p]laintiff fails to state a claim against it upon which relief can be granted, and claims against that defendant must be dismissed." *Pittman v.*

*Rutherford*, No. 19-36-DLB-CJS, 2019 WL 5558572, at *3 (E.D. Ky. Oct. 28, 2019) (internal quotation marks omitted) (citation omitted). Typically, determining whether a governmental entity may be sued requires looking at "the nature of the defendants and allegations, and the function of the entity indicate the claim is essentially against the county or city." *Id.* (citation omitted). In Kentucky, however, as a matter of law "county and city police departments . . . are not suable entities . . . ." *Id.* at *4; *see also Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthew's complaint." (citations omitted)); *Gueye v. Richards*, No. 2:15-cv-178-DLB, 2015 WL 6395009, at *6 (E.D. Ky. Oct. 21, 2015) ("The Boone County Sheriff's Office is not a municipality or independent legal entity; rather, it is merely an adjunct or department of Boone County, Kentucky, or the Boone County Fiscal Court." (citations omitted)); *Hocker v. Pikeville City Police Dep't*, No. 7:11-122-EBA, 2013 WL 587897, at *4 (E.D. Ky. Feb. 13, 2013), *aff'd*, 738 F.3d 150 (6th Cir. 2013) (finding that the Pikeville City Police Department is not the proper party because "the city exercises significant control over the police department and the department acts as an extension of the city."). Plaintiffs' allegation that the GPD is a "municipal entity" cannot overcome the fact that city and county law enforcement agencies are not entities subject to suit in Kentucky.

Plaintiffs also assert claims against Turcotte, Phillips and Murrell in their official capacities. (Compl. ¶¶ 3-9). As a sister court has noted:

> Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.

*Thorpe ex rel. D.T. v. Breathitt Cnty. of Educ.*, 932 F. Supp. 2d 799, 803 (E.D. Ky. 2013) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Therefore, while "the Sixth Circuit has never

3

specifically decided whether district courts should actually dismiss official capacity claims where the local governmental entity is already a party", the Eastern and Western Districts of Kentucky have adopted the practical approach of dismissing the official capacity claims. *Baar v. Jefferson Cnty. Bd. of Educ.*, 686 F. Supp. 2d 699, 704 (W.D. Ky. 2010) (citations omitted), *aff'd*, 476 F. App'x 621 (6th Cir. 2012). Accordingly, because the official capacity claims are duplicative of the claims against Glasgow, Plaintiffs' official capacity claims against Turcotte, Phillips and Murrell will be dismissed.

**B. 42 U.S.C. § 1983 Claim**[1]

In the Complaint, Plaintiffs assert Section 1983 claims based on alleged excessive use of force in detaining Marr.

**1. *Individual Capacity Claims***

Section 1983 can be used to bring claims against government officers who violate a suspect's Fourth Amendment rights by using excessive force in an arrest or investigatory stop. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Such claims are evaluated under the "objective reasonableness" standard. *See Chappell v. City of Cleveland*, 585 F.3d 901, 908 (6th Cir. 2009) (citing *Graham*, 490 U.S. at 396).

The Complaint alleges that while the officers were on the scene, Marr posed no threat to anyone present. (Compl. ¶ 16). Nevertheless, he was thrown to the ground, tased multiple times and held to the ground until he died. (Compl. ¶¶ 15-24). The GPD Officers' actions, as alleged, would give rise to a constitutional violation for use of excessive force. "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene,

---

[1] Plaintiffs concede that the Eighth Amendment does not apply in this case and therefore the Section 1983 claims under the Eighth Amendment will be dismissed. (Pls.' Resp. Defs.' Mot. Dismiss 19, DN 12).

rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (internal quotation marks omitted) (citation omitted). Courts consider three factors in determining whether the GPD Officers acted with excessive force: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or other"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citation omitted).

According to the Complaint, Marr was not suspected of any violence when police arrived, posed no immediate threat to the police or others at the scene and made no effort to evade the police. (Compl. ¶¶ 12-16). In *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893 (6th Cir. 2004), the court found that the plaintiff had properly alleged a constitutional violation of excessive force when officers laid on top of the plaintiff, who had stopped resisting, and sprayed him with pepper spray after he was immobilized. *Id.* at 903. Similarly, in *Landis v. Baker*, 297 F. App'x 453 (6th Cir. 2008), the court found that tasing a previously violent suspect after he was subdued by police constituted excessive force. *Id.* at 461. Plaintiffs allege that Marr was not a danger to the GPD Officers or any bystanders and he was already pinned on the ground in a prone position by police when he was repeatedly tased. (Compl. ¶¶ 15-19).

The Complaint here sufficiently alleges that GPD Officers violated Marr's constitutional rights and therefore Defendants' motion will be denied as to the Section 1983 claims.

### 2. *Qualified Immunity*

Under federal law, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citing *Procunier v. Navarette*, 434 U.S. 555, 565 (1978); *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). "Qualified immunity is a defense only to

individual capacity claims." *Meogrossi v. Aubrey*, No. 3:09CV-00301-JDM, 2011 WL 1235063, at *6 (W.D. Ky. Mar. 31, 2011).

To determine whether a defendant is entitled to qualified immunity, a court must consider: (i) whether "based on applicable law and the facts viewed in the light most favorable to the plaintiff, has a constitutional violation occurred"; and (ii) if so, whether "the constitutional right [was] 'clearly established' at the time of violation." *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6220921, at *8 (W.D. Ky. Nov. 28, 2018) (citing *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002); *Saucier v. Katz*, 533 U.S. 194 (2001)). Both inquiries must be resolved in the plaintiff's favor. *Hoskins v. Knox Cnty.*, No. 17-84-DLB-HAI, 2018 WL 1352163, at *19 (E.D. Ky. Mar. 15, 2018). "The [p]laintiff bears 'the burden of showing that' the Defendants are 'not entitled to qualified immunity.'" *Id.* (citation omitted).

As the Sixth Circuit has recognized, however, it is inappropriate for a court to resolve the applicability of qualified immunity in ruling on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("[I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." (alteration in original) (internal quotation marks omitted) (internal citation omitted) (citation omitted)). At this stage of the litigation, it would be inappropriate for the determine whether any claims are precluded by qualified immunity without affording Plaintiffs the opportunity to conduct discovery, and, thus, the motion will be denied on this basis.

### 3. *City of Glasgow*

Municipalities cannot be held liable for Section 1983 claims under the theory of respondent superior; instead, a plaintiff must allege "that the municipality's policy or custom caused the alleged injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978)). "One way to prove an unlawful policy or custom us to show a policy of inadequate training or supervision." *Id.* at 700 (citation omitted). To prevail on an inadequate training claim, a plaintiff must demonstrate: "(1) that a training program is inadequate to the tasks the officers must perform; (2) that the inadequacy is the result of the [City's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury." *Brown v. Chapman*, 814 F.3d 447, 463 (6th Cir. 2016) (alteration in original) (citation omitted). Furthermore, there are two ways a plaintiff can demonstrate deliberate indifference: (1) showing that the municipality has failed "to act in response to repeated complaints of constitutional violations by its officers"; or (2) by demonstrating that the municipality "fail[ed] to equip law enforcement officers with specific tools to handle recurring situations." *Cherrington v. Skeeter*, 344 F.3d 631, 646 (6th Cir. 2003) (citation omitted); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 490 (1997). This second manner is employed by Marr's Estate in this case.

Plaintiffs allege that "upon information and belief, the GPD has written internal policies, seemingly to effectuate that the use of force is carried out when using 'less lethal weapons', including but not limited to taser or stun guns." (Compl. ¶ 29). Likewise, Plaintiffs allege that "on information and belief, the GPD's training and policies fail to provide adequate training to officers in using a reasonable degree of force when a suspect is posing a threat to an officer, themselves, or someone else." (Compl. ¶ 32). And finally, the Complaint states that "if the GPD

had adequately trained its officers in using reasonable force, the GPD policemen would not have used excessive force on Jeremy Marr, resulting in his death and a violation of Marr's constitutional rights." (Compl. ¶ 36).

Through the above allegations, as well as others within the Complaint, Plaintiffs have adequately pleaded a failure to properly train claim against Glasgow. In support of dismissal, the City primarily relies on *Karsner v. Hardin County*, No. 3:20-CV-125-RGJ, 2021 WL 886233 (W.D. Ky. Mar. 9, 2021), which involved a Section 1983 claim against Hardin County. However, *Karsner* presents key elements distinguishing it from the present case. First, the complaint in *Karsner* did not specifically allege a failure to train claim against various defendants, whereas here Plaintiffs explicitly assert a failure to train claim against the Glasgow. Further, the complaint in *Karsner* did not allege a specific policy at issue; here the Complaint alleges internal policies that "effectuate that the use of force . . . when using 'less lethal weapons.'" (Compl. ¶ 29). Unlike *Karsner*, the allegations here are sufficiently specific to put the Glasgow on notice of the claims against it and the possible scope of discovery. Since GPD's internal policies are at issue (and presumably are not publicly available), Plaintiffs have pleaded the issue as thoroughly as realistically possible without the benefit of any discovery. *See Thomas v. City of Galveston*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011) ("In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage."). Dismissing this claim at this stage because GPD's training policies and methods are not available to the public would unfairly shield Glasgow from potential liability.

For these reasons, the motion to dismiss Marr's Estate's Section 1983 claim against Glasgow is denied.

### C. State Law Claims

Plaintiffs have also asserted battery, loss of consortium, and negligence claims against Defendants. Defendants contend that those claims fail to satisfy Fed. R. Civ. P. 12(b)(6).

#### 1. *State Qualified Immunity*

In Kentucky, public officials and employees enjoy qualified official immunity from liability arising from "the negligent performance by a public officer employee of (1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001) (internal citation omitted) (citations omitted). A discretionary act involves "the exercise of discretion and judgment" while a ministerial act is "one that requires only obedience to the orders of others . . . ." *Id.* (citation omitted). However, "[i]t is generally not appropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433. At this stage of the litigation, it would be inappropriate for the determine whether any claims are precluded by qualified immunity without affording Plaintiffs the opportunity to conduct discovery. The motion will be denied on this basis.

#### 2. *CALGA*

Glasgow also asserts that it is entitled to dismissal of Plaintiffs' negligence and negligent hiring claims claim based on the Claims Against Local Governments Act ("CALGA"), KRS 65.200-65.2006. In general, CALGA applies to "[e]very action in tort against any local government in this Commonwealth for death, personal injury or property damage . . . ." KRS 65.2001(1). CALGA, however, expressly limits any claim against a local government "arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others,

9

exercise of judgment or discretion vested in the local government . . . ." KRS 65.2003(1). In *Ashby v. City of Louisville*, 841 S.W.2d 184 (Ky. App. 1992), the court found that CALGA immunity did not apply to a local government who employed a negligent police officer because the claims against the local government did not involve judicial, quasi-judicial, legislative or quasi-legislative authority. *Id.* at 188. In this case, Glasgow has failed to demonstrate how any of the state tort claims against them involve judicial, quasi-judicial, legislative, or quasi-legislative authority. Glasgow has thus failed to demonstrate that CALGA immunity warrants the dismissal of the state law claims against it.

### 3. *Battery Claim*

Under Kentucky law, "[a] battery is any unlawful touching of the person of another, either by the aggressor himself, or by any substance set in motion by him." *Sigler v. Ralph*, 417 S.W.2d 239, 241 (Ky. 1967) (citation omitted). Marr's Estate alleges the GPD officers pinned him on the ground, restricting his breathing as they tased him 8-10 times and kneed him in the side. (Compl. ¶¶ 15, 17, 18, 20). Marr's Estate has thus successfully pleaded a battery claim, and Defendants' motion is denied as to this claim.[2]

### 4. *Negligence Claim*

Under Kentucky law, to succeed on a negligence claim, a plaintiff must prove "(1) a legally-cognizable duty, (2) a breach of that duty, (3) causation linking the breach to an injury, and (4) damages." *Howard v. Spradlin*, 562 S.W.3d 281, 286 (Ky. App. 2018) (citation omitted).

---

[2] Defendants contend that Marr's Estate's battery claim should be dismissed because under Kentucky law "[i]f police action is reasonable under Section 1983, a plaintiff cannot succeed on a common law battery claim." *Reich v. City of Elizabethtown*, No. 3:16-cv-00429-RGJ, 2018 WL 6028719, at *12 (W.D. Ky. Nov. 16, 2018) (citation omitted). Marr's Estate's Section 1983 claim has not been dismissed, and thus it has yet to be determined if the GPD Officers' actions were reasonable under Section 1983.

10

Defendants contend that dismissal of Marr's Estate's negligence claim is appropriate because the City is entitled to immunity under CALGA and the officers are entitled to qualified immunity. (Defs.' Mot. Dismiss 13-15). However, dismissal under qualified immunity grounds is not appropriate prior to discovery. *See Wesley*, 779 F.3d at 433.

### 5. *Loss of Consortium Claims*

Plaintiffs have also asserted claims for loss of spousal and parental consortium. (Compl. ¶¶ 61-68). Under Kentucky law, a loss of consortium claim "is derivative of the injured party's bodily injury claim . . . ." *Daley v. Reed*, 87 S.W.3d 247, 248-49 (Ky. 2002) (citations omitted). A spousal loss of consortium claim is to compensate the spouse for the loss of "services, assistance, aid, society, companionship and conjugal relationship between" spouses. KRS 411.145(1). Similarly, Kentucky recognizes a loss of parental consortium for "the loss of love and affection" of the injured parent. *Giuliani v. Guiler*, 951 S.W.2d 318, 322 (Ky. 1997). Plaintiffs' loss of consortium claims cannot be dismissed in this stage of the litigation. *Burgett v. Troy-Build LLC*, 970 F. Supp. 2d 676, 685 (E.D. Ky. 2013).

### 6. *Negligent Hiring Claim*

Marr's Estate also asserts a negligent hiring claim against Glasgow. (Compl. ¶¶ 69-71). Under Kentucky law, to succeed on a negligent hiring claim, a plaintiff must prove: "(1) the employer knew or reasonably should have known that an employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Smith v. Norton Hosps., Inc.*, 488 S.W.3d 23, 32 (Ky. App. 2016) (citation omitted). Glasgow contends that this claim should be dismissed because Marr's Estate fails to adequately plead this claim. (Defs.' Mot. Dismiss 15-16). The Complaint contends that in light of the GPD Officers' actions, which caused Marr's death, Glasgow

11

negligently "hire[d], train[ed] and supervise[d]" the GPD Officers "with regard to the amount of force necessary for arrest". (Compl. ¶ 69-71). For a plaintiff to sufficiently plead a claim, "detailed factual allegations are not required," but the facts presented must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009) (internal quotations omitted) (citation omitted). Although Marr's Estate does not name a specific hiring or training procedure, the identification of negligence in training the officers about the amount of force necessary for an arrest is enough for Marr's Estate to properly plead its claim. This claim once again involves internal Glasgow policies and procedures, and it would be inappropriate to dismiss this claim without giving Marr's Estate the opportunity to conduct discovery.

## IV.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 11) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' 42 U.S.C. § 1983 cruel and unusual punishment claim is **DISMISSED**. All claims against the officers in their official capacities are **DISMISSED**. All claims against the Glasgow Police Department are **DISMISSED**.

Greg N. Stivers, Chief Judge
United States District Court

March 18, 2022

cc:     counsel of record