UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00050-GNS-HBB

*Electronically Filed*

| | |
|---|---|
| ESTATE OF JEREMY MARR, by and through its Administrator, JOANNA MARR, *et al.* | PLAINTIFFS |
| V.   **REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF THE CITY OF GLASGOW** | |
| CITY OF GLASGOW, *et al.* | DEFENDANTS |

Defendant, the City of Glasgow, Kentucky, by counsel, for its reply brief in support of its motion for summary judgment [DN 48], states as follows:

## FACTUAL BACKGROUND

Plaintiffs generally accept the factual narrative contained in the City's motion concerning its officer training regimen. [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 2-3.]

However, as noted in the Individual Defendants' contemporaneously filed summary judgment reply brief, Plaintiffs' theory of the case has shifted from one focused primarily on Officer Turcotte's taser deployments to one focused primarily on the officers' alleged use of their body weight and other physical force to restrain Marr in a prone position on the ground. The officers' reply brief discusses in detail the factual and legal deficiencies in this theory—namely, that there is no material dispute of fact that the officers *did not* forcefully restrain Marr against the ground and that the uses of force employed were legally permissible and not clearly established as violative of Marr's rights. Nevertheless, because Plaintiffs' response briefs discuss the use of physical force as opposed to taser use, it is worthwhile to discuss the City's policies and training in this regard.

The City's "Response to Resistance" policy exists "to direct officer[s] in the appropriate use of force." [Response to Resistance Policy, DN 48-1 at 1.] It defines "active resistance" as a suspect's "affirmative action to defeat an officer's ability to take them into custody." [*Id.* at 2.] And it defines "physical force" as the "[u]se of any part of an officer['s] body, such as joint manipulation, leverage, pain compliance, take-down maneuvers or neck restraint holds." [*Id.*]

After defining these and other terms, the policy outlines the general guidelines concerning officer use of force. The policy supplies a three-factor test for officers to use: (1) the seriousness of the suspected offense, (2) the physical threat to the officer or others, and (3) whether the suspect was actively resisting or attempting to flee. [*Id.*] Significantly, these are the same three factors outlined in *Graham v. Connor*, 490 U.S. 386 (1989), which have been extensively discussed in the briefing on the officers' motion for summary judgment. In other words, *the City's policy tracks the requirements of the Fourth Amendment as defined by the United States Supreme Court*.

Next, the policy outlines the various types of physical force available to officers. Among them are "soft empty hand control"—the "use of hands on the subject to direct the subject's movement," and "hard hand control"—"[p]unches and other physical strikes, including knees, kicks and elbow strikes that have the possibility of creating mental stunning and/or motor dysfunction." [*Id.* at 2-3.] However, the policy notes that the use of these and other options "will be dictated by the actions of the suspect upon the appearance of the police officer," and "[o]fficer[s] may be limited in their options due to the circumstances and actions of the subject." [*Id.* at 2.][1]

---

[1] Both of Plaintiffs' liability expert witnesses agreed that a police officer in the field must react in the moment to the actions of the suspect. [George Kirkham Dep., DN 64, p. 113 ll. 13-16; Joseph Stidham Dep., DN 65, p. 55 ll. 17-25]. Stidham agreed that police officers are afforded discretion on how to react to a suspect's actions and discretion to make judgment calls during encounters with suspects. [Stidham Dep., DN 65, p. 37 ll. 5-9, p. 66 ll. 14-22.]

The City's opening brief also discussed the "Dealing with Persons of Diminished Capacity" policy. [Diminished Capacity Policy, DN 48-2.] This policy directs that "[o]fficers should utilize all available tactics to de-escalate the situation where possible; however if an officer is faced with a dynamic and violent situation which poses a threat to officers or other persons present, then officers should utilize their law enforcement control tactics outlined under the 'Response to Resistance' policy to gain control." [*Id.* at 2.] In other words, while the diminished capacity policy discusses de-escalation, it does not require it, especially where the resisting suspect poses a physical threat. Officers still retain discretion to make judgment calls on how to subdue and control an actively resisting suspect, like Jeremy Marr.

The City's training officer, John DuBarry, testified he covers the entire Response to Resistance policy in his initial and recertification trainings. *See* [DuBarry 3/15/23 Dep., DN 59 at 9-10, pp. 30-36; DuBarry 5/26/23 Dep., DN 60 at 3-4.] Officers are trained on the policy at least yearly through the Deer Creek electronic training system. [DuBarry 5/26/23 Dep., DN 60 at 3, pp. 7-8.] Officer Turcotte, Officer Phillips, and Sergeant Murrell confirmed they were trained regularly on defensive tactics and the use of force, not merely taser use. [Turcotte Dep., DN 49 at 8, p. 26; *id.* at 9, pp. 31-33; Phillips Dep., DN 50 at 7, pp. 22-25; Murrell Dep., DN 51 at 7, pp. 22-25; *id.* at 11, pp. 39-40; *id.* at 14, pp. 51-53.] There is no record proof to the contrary.

## ARGUMENT

### I. The City is Entitled to Summary Judgment on Plaintiffs' *Monell* Claim

As a threshold matter, Plaintiffs do not dispute that, if the Individual Defendants are entitled to qualified immunity, their *Monell* municipal liability claim against the City fails. *See* [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 6-7.]; *Dibrell v. City of Knoxville, Tenn.*, 984 F.3d 1156, 1165 (6th Cir. 2021). For the reasons explained in their principal motion and

contemporaneous reply, the Individual Defendants are shielded by qualified immunity and Plaintiffs' claims against them should be dismissed. If the Court agrees, Plaintiffs do not contest that their claims against the City of Glasgow must be dismissed as well.

Turning to the merits, Plaintiffs agree that a *Monell* municipal liability claim can proceed under four theories, the latter two of which are relevant here: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013); *see* [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 8.] Those two theories are discussed below, beginning (as Plaintiffs do) with the "pattern and practice" theory of liability.

   A. *Plaintiffs' Insufficient Evidence of a Pattern or Practice of Civil Rights Violations*

Plaintiffs point to a single instance of alleged misconduct to establish the "existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* That case is *Shelton v. Greer*, No. 1:20-cv-00046-GNS (W.D. Ky.), where a fleeing suspect alleged a Glasgow Police Department officer used excessive force while effecting his arrest at the conclusion of a high-speed chase. This Court denied the Glasgow officer's motion for summary judgment in part, finding there was a material dispute of fact regarding the timing of the officer's use of force *vis-à-vis* the officer's handcuffing of the suspect. *See Shelton v. Greer*, 2022 WL 3439390, at *3 (W.D. Ky. Aug. 16, 2022). The case ultimately settled prior to trial.[2]

---

[2] It should be pointed out that the Plaintiffs did not ask a single question about the *Shelton* case to any of the twenty witnesses who were deposed in this case. In other words, the reference to *Shelton* in the Plaintiffs' summary judgment response is nothing but an afterthought; it is not a central portion of Plaintiffs' theory of the case – which is that the Defendant officers did not follow their training. *See* deposition testimony of Plaintiff expert witness George L. Kirkham where he agreed

4

For at least two reasons, Plaintiffs' reliance on *Shelton* is insufficient to establish a pattern or practice of civil rights violations under *Monell*. First, "[o]ne instance of potential misconduct is insufficient to show a clear and persistent pattern of constitutional violations." *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F. Supp. 3d 532, 538-39 (W.D. Ky. 2020) (citing *Stewart v. City of Memphis*, 788 F. App'x 341, 347 (6th Cir. 2019)). *See also Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 539 (W.D. Ky. 2005) ("one incident does not show that the Bowling Green Police Department had notice of this type of alleged illegal activity.") "Arguing that one instance of potential misconduct is evidence of a clear and persistent pattern is a path to municipal liability that has been forbidden by the Supreme Court." *Stewart*, 788 F. App'x at 347 (cleaned up); *see also Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 (6th Cir. 2007) (holding that two incidents of unconstitutional searches over the course of five months did not demonstrate behavior so permanent and settled as to constitute a custom or usage with the force of law). *Compare with Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1247 (6th Cir. 1989) (fourteen prior instances of inmate abuse sufficient to establish *Monell* custom of tolerance); *Lipman v. Budish*, 974 F.3d 726, 748 (6th Cir. 2020) (six separate interviews of potential child abuse victim in presence of alleged abusers sufficient to establish custom).

Here, Plaintiffs' reliance on a single prior case that was settled without any admission of or any finding of liability is insufficient as a matter of law to establish that the City of Glasgow has a "custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478.

Second, there is incongruity between the allegations in *Shelton* and Plaintiffs' theory in this case. Although Plaintiffs' theory has shifted throughout this case, it can now effectively be

---

that he does not have any criticisms of the training of the three Glasgow police officers (rather, his issue was whether they followed their training). [Kirkham Dep. DN 64, p. 50 ll. 1-16.]

distilled down as follows: Plaintiffs allege the Glasgow officers violated Marr's civil rights by using excessive force, in the form of taser deployments, knee strikes, and forceful prone restraint, while Marr was passively but not actively resisting, *before* he was handcuffed. However, the suspect's claim in *Shelton* only survived summary judgment because there was a dispute of fact regarding whether the officer exerted excessive physical force, in the form of a foot stomp, *after* the suspect had been handcuffed. *Shelton*, 2022 WL 3439390, at *2. These two cases are not sufficiently similar to even arguably demonstrate a pattern of officially sanctioned behavior.

To establish a pattern or practice of unconstitutional conduct under *Monell*, the past violations must be sufficiently similar in nature. *See Leach*, 891 F.2d at 1248. *See also Burgess*, 735 F.3d at 478 ("a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims.") (Citations omitted); *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 503 (W.D. Ky. 2021) ("The 'pattern' requirement of course implies repetition of similar events.") (Citation omitted). Here, a single instance of an officer allegedly stomping on a handcuffed suspect cannot substantiate a custom of tolerance or acquiescence on the part of the City to its officers tasing, kneeing, and forcefully restraining unhandcuffed suspects in a way that violates the Constitution. The allegations in the *Shelton* case are not sufficiently similar to be actionable against the City of Glasgow. *See Beard*, 244 F. App'x at 613 (finding the posited cases insufficiently similar to be actionable).

  B.  *The City's Policies and Training Regimen Are Not Constitutionally Inadequate*

Likely realizing their "pattern or practice" theory has little merit, Plaintiffs spend most of their responsive brief discussing the supposed inadequacy of the City's policies and training pertaining to the use of physical force. [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 2-4, 9-12.] Again, Plaintiffs do not quarrel with the rubric the City outlined in its principal motion: to prevail

on this theory of *Monell* liability, Plaintiffs must plead and prove "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.*, 455 F.3d 690, 700 (6th Cir. 2006); *see* [*id.* at 9-10.] And, because Plaintiffs have not (and cannot) demonstrate a pattern of past unconstitutional conduct, the only way they can prove the deliberate indifference element is by showing "a complete failure to train the officers" or "training that is so reckless or grossly negligent that future misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Sistrunk*, 545 F. Supp. 3d 493, 500 (W.D. Ky. 2021) (cleaned up).

As discussed more thoroughly in the City's principal summary judgment brief, the City's Response to Resistance policy extensively covers when and how officers should use tasers. *See* [City's Mot. Summ. J., DN 48 at 3-4.] And, as outlined above, the same policy sets forth the guidelines (fashioned from *Graham*) under which *all* types of force may be used under the force continuum, including but not limited to "physical force," including "joint manipulation, leverage, pain compliance, take-down maneuvers or neck restraint holds," and "hard hand control," involving the use of physical strikes. [Response to Resistance Policy, DN 48-1 at 2-3.] Thus, Plaintiffs' assertion that the City's policies do not provide guidance on the use of physical force is plainly incorrect. And the three officers involved in the encounter with Marr testified they were regularly trained on the Response to Resistance policy and understood it. There is no record proof to the contrary.

At this juncture, Plaintiffs fault the City for not having a policy that specifically addresses the combination of taser use and physical force. [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 11-12.] However, they fail to cite a *single case* in which a set of policies and training program

7

similar to the City's was held inadequate, much less any precedent that suggests the Fourth Amendment requires comprehensive policies and training on various combinations of types of forces. [*Id.* at 9-12.] In contrast, the City previously cited a number of cases in which similar policies and training to its own were held legally sufficient. *See* [City's Mot. Summ. J., DN 48 at 11-12 (citing *Roell v. Hamilton Cnty.*, 870 F.3d 471, 488 (6th Cir. 2017); *Sheffey v. City of Covington*, 2012 WL 28056, at *16-17 (E.D. Ky. Jan. 5, 2012).]

Simply stated, Plaintiffs have not carried their burden to create a genuine issue of material fact with respect to the adequacy of the City's use-of-force policies and training. The instant case is not a situation like *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 288 (6th Cir. 2020), where the municipality provided its officers no training on the use of excessive force, or one like *Wright v. City of Euclid*, 962 F.3d 852, 881 (6th Cir. 2020), where the training consisted of merely reading the use-of-force policy at roll call. Plaintiffs have failed to demonstrate that the City of Glasgow completely failed to train its officers, or its training regimen was "so reckless or grossly negligent" that Marr's death was "almost inevitable" or "substantially certain to result." *Sistrunk*, 545 F. Supp. 3d at 500. This case is simply not one of the "exceedingly rare" instances where a *Monell* municipal liability claim should survive summary judgment. *Hanson v. Madison Cnty. Detention Ctr.*, 738 F. App'x 521, 542 (6th Cir. 2018). As such, the Plaintiffs' *Monell* municipal liability claim fails as a matter of law.

    **II.**    **The City is Entitled to Summary Judgment on Plaintiffs' State-Law Claims**

The City also moved for summary judgment on Plaintiffs' state-law claims of battery and negligence, negligent hiring, retention, supervision and training, and derivative loss of spousal and parental consortium. [City's Mot. Summ. J., DN 48 at 14-16.]

8

Regarding the common-law battery and negligence claims, Plaintiffs do not dispute the City's argument that, if the Individual Defendants are entitled to summary judgment on these claims as the officers have contended, then the City likewise cannot be held liable on a vicarious liability theory. [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 13.] And, as for the potential for direct liability against the City for these claims, Plaintiffs do nothing more than cite to their Complaint, which is insufficient to survive summary judgment. *See* [*id.*]

Regarding the negligent hiring, retention, supervision, and training claim, the City previously noted no facts in the record support this claim because each of the Individual Defendants possessed the necessary training and credentials to work as police officers in this Commonwealth and had no record of incidents that would have disqualified them. [City's Mot. Summ. J., DN 48 at 15-16.] Plaintiffs' response fails to cite to any facts of record demonstrating the City of Glasgow "knew or should have known of the risk the employee created." *Fields v. Hopson*, No. 1:23-CV-00015-GNS, 2024 WL 55566, at *4 (W.D. Ky. Jan. 4, 2024) (citing *Ritchie v. Turner*, 559 S.W.3d 822, 842 (Ky. 2018)). *See* [Pls.' Resp. to City's Mot. Summ. J., DN 70 at 15.] Again, Plaintiffs' opposition falls short of the summary judgment standard, which requires them to present specific facts indicating a genuine disputed issue for trial.

Finally, Plaintiffs do not dispute that their state-law loss of consortium claims against the City are non-substantive in nature and must be dismissed in the event the Court grants summary judgment on the substantive claims. *See* [City's Mot. Summ. J., DN 48 at 16; Pls.' Resp. to Mot. Summ. J., DN 70 at 14.]

## CONCLUSION

For the foregoing reasons, Defendant City of Glasgow respectfully asks the Court to grant its motion for summary judgment and dismiss Plaintiffs' claims against it with prejudice.

This 1st day of May, 2024.

> KERRICK BACHERT PSC
> P.O. BOX 9547
> BOWLING GREEN, KY 42102
> T: (270) 782-8160
> tkerrick@kerricklaw.com
> mcook@kerricklaw.com
> cgivens@kerricklaw.com
>
> */s/ Matthew P. Cook*
> Thomas N. Kerrick
> Matthew P. Cook
> Colton W. Givens
> *Counsel for Defendants*

## CERTIFICATE OF SERVICE

This will certify that a true and exact copy of the foregoing was on this 1st day of May, 2024, filed electronically via the CM/ECF efiling system and forwarded via email to the following:

David F. Broderick
Brandon T. Murley
Broderick & Davenport, PLLC
921 College Street
P.O. Box 3100
Bowling Green, KY 42102-3100
dbroderick@broderickfirm.com
bmurley@broderickfirm.com
*Counsel for Plaintiffs*

> */s/ Matthew P. Cook*
> Counsel for Defendants