**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed:  March 16, 2026

Mr. David F. Broderick
Broderick & Davenport
P.O. Box 3100
Bowling Green, KY 42102

Mr. Matthew Porter Cook
Mr. Colton William Givens
Kerrick Bachert
1411 Scottsville Road
Bowling Green, KY 42102-9547

   Re:  Case No. 25-5662, *Estate of Jeremy Marr, et al v. City of Glasgow, KY, et al*
        Originating Case No. 1:21-cv-00050

Dear Counsel,

   The Court issued the enclosed opinion today in this case.

   Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                   Sincerely yours,

                                   s/Cathryn Lovely
                                   Opinions Deputy

cc: Mr. James J. Vilt Jr.


Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  26a0141n.06

Case No. 25-5662

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| THE ESTATE OF JEREMY MARR, by and through JOANNA MARR, its Administrator, and JOANNA MARR, individually and on behalf of E.J.M., a minor, | ) ) ) ) ) | **FILED** Mar 16, 2026 KELLY L. STEPHENS, Clerk |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| CITY OF GLASGOW, KENTUCKY, CITY OF GLASGOW POLICE DEPARTMENT, GUY JOSEPH TURCOTTE, individually and in his official capacity as a Glasgow Police Officer, HAYDEN PHILLIPS, individually and in his official capacity as a Glasgow Police Officer, and CAMERON MURRELL, individually and in his official capacity as a Glasgow Police Officer, | ) ) ) ) ) ) ) ) ) ) ) ) | OPINION |
| Defendants-Appellees. | ) ) | |

Before:  GILMAN, KETHELEDGE, and HERMANDORFER, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.**  Jeremy Marr tragically died in April 2020 following a struggle with officers from the Glasgow Police Department.  Marr was tased and kneed multiple times when he resisted arrest, with the arrest being prompted by Marr's reported break-in to an elderly woman's home and his erratic, likely drug-induced, behavior.

Joanna Marr, as the administrator of Marr's estate, as an individual, and on behalf of their minor child E.J.M. (Plaintiffs), sued the City of Glasgow (the City), its Police Department, and the three individual officers involved (collectively, Defendants), alleging that the officers had used

No. 25-5662, *Estate of Marr v. City of Glasgow*

excessive force against Marr.  The district court granted summary judgment in favor of Defendants on the federal claims based on its determination that the officers' actions were shielded by qualified immunity and that the derivative claims against the City were therefore without merit.  It also rejected all of Marr's state-law claims arising from the same incident.  For the following reasons, we **AFFIRM** the judgment of the district court.

## I.    BACKGROUND

On the morning of April 14, 2020, an elderly woman called the police to report that a man had broken into her home in Glasgow, Kentucky.  Officer Joseph Turcotte of the Glasgow Police Department responded to the call and arrived to find Marr exiting the house wearing only socks on his feet and holding a pair of sandals.

Marr appeared distressed, and he exhibited symptoms consistent with methamphetamine intoxication.  Upon seeing Officer Turcotte, Marr stated that people were out to get him and that he did not want to be hurt.  Officer Turcotte then asked Marr whether he had any weapons on his person.  Marr initially said no, before responding that he had a knife.  When Marr began to reach into his pocket to surrender the knife, Officer Turcotte ordered him not to take it out.

Marr then allowed Officer Turcotte to lead him toward the patrol car so that Officer Turcotte could conduct a pat-down search of his person.  At this point, Officers Cameron Murrell and Hayden Phillips arrived at the scene.  During the pat-down, Officer Turcotte told Marr that he was acting "squirrelly" and was "freaking us out."  The officers then placed Marr's hands behind his back and began to handcuff him.

 Marr's left hand was cuffed before he began repeatedly shouting: "Please don't kill me!"  He then attempted to pull away from the officers.  In response, the officers wrestled Marr to the ground, with one officer straddling him and the other two restraining his arms and legs.  A struggle

- 2 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

ensued, during which the officers repeatedly ordered Marr to stop moving and to place his hands behind his back. But Marr did not comply and instead thrashed about.

After about a minute, Officer Turcotte tased Marr. Marr nevertheless continued to struggle. Only after another three minutes of wrestling were the officers finally able to handcuff Marr and shackle his ankles. During that time, Officer Turcotte tased Marr approximately 8 to 11 times, and Officer Phillips delivered multiple knee strikes to Marr's body.

The officers rolled Marr onto his back once he was subdued. At this point, they noticed that Marr's breathing had become shallow, so they called for emergency medical services. Marr was immediately transported to a hospital, but he was pronounced dead on arrival. Kentucky's Office of the Chief Medical Examiner determined that the cause of Marr's death was "agitated/excited delirium complicating acute methamphetamine intoxication during process of law enforcement subdual/arrest."

The entirety of the encounter was captured on Officer Turcotte's bodycam, aside from several brief moments when his camera was obscured while the officers wrestled with Marr on the ground. Officer Phillips's bodycam, on the other hand, recorded only the beginning of the incident before it became dislodged during the struggle. And Officer Murrell's bodycam was not activated until after Marr was subdued. In addition to the officers' bodycams, a bystander recorded a nine-second video of the encounter.

Plaintiffs brought suit against Defendants in March 2021. The district court subsequently granted Defendants' motion to dismiss Plaintiffs' claim for cruel and unusual punishment, as well as all claims against the Glasgow Police Department and the three officers in their official capacities. This left Plaintiffs' claim under 42 U.S.C. § 1983 for excessive force, in violation of the Fourth Amendment, and their Kentucky state-law claims for battery, negligence, wrongful

No. 25-5662, *Estate of Marr v. City of Glasgow*

death, loss of consortium, as well as negligent hiring, retention, supervision, and training.  In January 2025, the court granted summary judgment in favor of Defendants on all of Plaintiffs' remaining claims.  Plaintiffs thereafter filed a motion to alter, amend, or vacate the summary-judgment order, which the court denied in June 2025.  This timely appeal followed.

## II.    ANALYSIS

### A.    Standard of review

"The standard of review for summary judgment is de novo." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008).  "Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Helphenstine v. Lewis County*, 60 F.4th 305, 314 (6th Cir. 2023) (quoting *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017)).  "The party moving for summary judgment carries the initial burden of showing the absence of a genuine dispute of material fact; if it satisfies that burden, the nonmoving party must show 'specific facts that reveal a genuine issue for trial.'" *Marshall v. The Rawlings Co. LLC*, 854 F.3d 368, 381 (6th Cir. 2017) (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014)).

"'There is, however, an added wrinkle' where the record contains 'a videotape capturing the events in question.'" *LaPlante v. City of Battle Creek*, 30 F.4th 572, 578 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)).  "Because facts 'must be viewed in the light most favorable to the nonmoving party only if there is a '*genuine*' dispute as to those facts,' we may not adopt a version of the facts that is 'blatantly contradicted' by video footage that is not 'doctored or altered in any way' and which clearly 'depicts . . . [the events that] actually happened.'" *Id.* (emphasis in original) (quoting *Scott*, 550 U.S. at 378–80).  We must nevertheless

- 4 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

"view any relevant gaps or uncertainties left by the videos in the light most favorable to the Plaintiff." *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017).

**B.      Officers Murrell, Phillips, and Turcotte are entitled to qualified immunity on Plaintiffs' § 1983 excessive-force claim**

We begin with Plaintiffs' § 1983 excessive-force claim against the individual officers involved in Marr's arrest.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.  This prohibition against unreasonable searches and seizures bars law-enforcement officers from using excessive force against individuals. *Graham v. Connor,* 490 U.S. 386, 394–95 (1989).  "To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'"  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott,* 119 F.3d 425, 429 (6th Cir. 1997)).

The three officers in this case raise the affirmative defense of qualified immunity.  This defense "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Because the officers have invoked qualified immunity, Plaintiffs "bear[] the burden to show that qualified immunity is inappropriate." *See Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013).

"We ask two questions in evaluating whether a law-enforcement officer is entitled to qualified immunity on an excessive-force claim: '(1) whether the officer violated the plaintiff's constitutional rights under the Fourth Amendment; and (2) whether that constitutional right was

- 5 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

clearly established at the time of the incident.'" *Roell v. Hamilton County*, 870 F.3d 471, 480 (6th Cir. 2017) (quoting *Est. of Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017)). "These questions can be answered in any order," and a finding that either produces a negative answer is sufficient to defeat the excessive-force claim. *Id.* Furthermore, "[e]ach officer can be held liable only for his own wrongdoing, and so we review the actions of each officer separately." *Reed v. Campbell County*, 80 F.4th 734, 748 (6th Cir. 2023). "We also review separately each use of force by the same officer." *Id.*

Viewing the evidence in the light most favorable to Plaintiffs, we conclude that Officers Murrell, Phillips, and Turcotte are each entitled to qualified immunity. We initially note that resolving the first qualified-immunity question in this case is not free from doubt. In evaluating whether an officer has violated an individual's Fourth Amendment rights, courts must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

The district court, in assessing these factors as they applied to Marr, found that no constitutional violation had occurred because Marr's break-in was a "significant crime," his agitated and "squirrelly" state posed a threat to the officers, and his struggle with the officers constituted active resistance to arrest. Yet Plaintiffs present some troubling evidence that arguably could raise a genuine factual dispute on this issue, including the somewhat incomplete video footage, the disputed circumstances surrounding the initial break-in, and evidence that the officers did not adhere to their training regarding the use of force on individuals with diminished capacity.

We ultimately need not resolve this first prong of qualified immunity, however, because we conclude that Plaintiffs have failed to meet their burden as to the second prong—that is, to

- 6 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

identify a clearly established constitutional right that the officers violated. *See Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508 (6th Cir. 2012) ("We opt to answer the easier of the two [qualified-immunity] questions, saving the harder one for another day."). "In order for a right to be clearly established for the purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Est. of Hill*, 853 F.3d at 316 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The relevant inquiry is "whether the state of the law [at the time of the action giving rise to the claim] gave [the defendants] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Baynes v. Cleland*, 799 F.3d 600, 610 (6th Cir. 2015) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

"In deciding whether a right has been clearly established, the Supreme Court has 'repeatedly' warned lower courts not to define the right at 'a high level of generality.'" *Hagans*, 695 F.3d at 508 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[S]pecificity is especially important in the Fourth Amendment context, where the [Supreme] Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). For this reason, "police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Mullenix*, 577 U.S. at 13).

Here, Plaintiffs argue that the officers violated Marr's clearly established "right to be free from use of force disproportionate to the particular circumstances." This court has indeed acknowledged that "the right to be free from excessive force is a clearly established Fourth Amendment right" in the abstract sense. *See Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001).

- 7 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

But this court has also repeatedly cautioned that such a right is not sufficiently specific for qualified-immunity purposes. *Hagans*, 695 F.3d at 508 (noting that the "lofty definition" of a "'right to be free from excessive force' . . . do[es] little to answer the [qualified-immunity] question"); *Shumate v. City of Adrian*, 44 F.4th 427, 449 (6th Cir. 2022) (explaining that although "this general right is well known, the right at issue [for qualified immunity] is not defined at such 'a high level of generality'" (quoting *Palma v. Johns*, 27 F.4th 419, 442 (6th Cir. 2022), *abrogated on other grounds by Barnes v. Felix*, 605 U.S. 73 (2025))). Instead, Plaintiffs must demonstrate "the prior articulation of a prohibition against the type of [allegedly] excess force exerted here." *See Champion v. Outlook Nash., Inc.*, 380 F.3d 893, 902 (6th Cir. 2004).

We accordingly must examine the specific actions by the officers that Plaintiffs claim were excessive; i.e., the repeated tasing and knee strikes. With respect to tasing, "[w]e have often found" that whether an individual's clearly established Fourth Amendment rights are violated by "an officer's use of a taser turns on active resistance." *Kent v. Oakland County*, 810 F.3d 384, 392, 396 (6th Cir. 2016) (collecting cases). Although "there is a clearly established right not to be tased when the suspect is not actively resisting arrest," the same does not hold true "when a suspect is actively resisting arrest." *Wright v. City of Euclid*, 962 F.3d 852, 870 (6th Cir. 2020) (collecting cases). A similar dichotomy applies to knee strikes: "When a suspect actively resists arrest, the police can use . . . knee strike[s] to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Rudlaff v. Gillispie*, 791 F.3d 638, 642 (6th Cir. 2015).

The question we must therefore answer is whether Plaintiffs have presented sufficient evidence to show a genuine dispute that Marr was not actively resisting arrest, such that the repeated use of a taser and knee strikes against him violated clearly established law. We conclude that they have not. "Active resistance includes 'physically struggling with, threatening, or

- 8 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

disobeying officers.'" *Kent*, 810 F.3d at 392 (quoting *Rudlaff*, 791 F.3d at 641). "It also includes 'refusing to move your hands for the police to handcuff you.'" *Id.* (quoting *Rudlaff*, 791 F.3d at 641). "If an arrestee 'kick[s], flail[s], and wriggl[es] away' from an arresting officer's grasp or 'repeatedly pull[s] his left arm away' from an officer's handcuffs," the officer may use force to restrain him. *Moore v. Oakland County*, 126 F.4th 1163, 1168 (6th Cir. 2025) (citations omitted). But, of course, such force must cease once the arrestee has become "compliant" or has "stopped resisting." *Rudlaff*, 791 F.3d at 641 (citations omitted).

The undisputed evidence in this case shows that Marr actively resisted arrest. When the officers first attempted to handcuff him, he prevented them from cuffing his right hand by pulling it away from their grasp. Then, after the officers wrestled him to the ground, he did not comply with their commands to stop moving and instead struggled and thrashed about. Such actions, this court has repeatedly held, permit officers to use force without violating clearly established law. *See, e.g.*, *Hagans*, 695 F.3d at 510 (holding that an officer did not "violate clearly established law [in] tas[ing] an out-of-control, shirtless man strung-out on drugs who was thrashing about with two officers on the ground"); *Siders v. City of Eastpointe*, 819 F. App'x 381, 390 (6th Cir. 2020) (holding that an officer did not violate clearly established law when he tased the plaintiff "while she thrashed on the street[,] refusing to comply with his repeated orders to put her hands behind her back for cuffing"); *Roell*, 870 F.3d at 482, 486–87 (holding that deputies did not violate clearly established law when they tased an arrestee who "resisted the deputies' attempts to restrain and handcuff him by kicking, flailing, and wriggling away from their grasp"). Moreover, the officers used force against Marr only while he continued resisting. Plaintiffs do not dispute that all such force ceased once Marr was restrained.

- 9 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

Plaintiffs nevertheless contend that whether Marr intended to resist arrest is debatable from his actions, and thus they should prevail on summary judgment because material factual disputes must be resolved in their favor. But there are two problems with this argument. First, Plaintiffs themselves concede that "Marr continued to thrash" when struggling with the officers on the ground. Thrashing and flailing, as explained above, constitutes active resistance. *Hagans*, 695 F.3d at 510; *see also Siders*, 819 F. App'x at 390; *Roell*, 870 F.3d at 482, 486–87. And although Marr's resistance might not have been as egregious as some other examples from our caselaw, this court has "emphasiz[ed] that minimal resistance still constitutes resistance." *King v. City of Rockford*, 97 F.4th 379, 397 (6th Cir. 2024) (citing *Rudlaff*, 791 F.3d at 643–44).

Second, even if Marr did not in fact mean to resist arrest, what matters is that the officers reasonably believed that he did. "[A] court should grant the officer qualified immunity if, viewing the facts favorably to the plaintiff, an officer reasonably could have believed that the arrest was lawful." *Barton v. Martin*, 949 F.3d 938, 950 (6th Cir. 2020) (quoting *Kennedy v. City of Villa Hills*, 635 F.3d 210, 214 (6th Cir. 2011)). And the qualified-immunity defense applies even if that reasonable belief was erroneous. *Id.*; *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) ("Qualified immunity gives ample room for mistaken judgments . . . irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact." (cleaned up)).

Here, Plaintiffs acknowledge that Marr's actions "could have signaled resistance as automatically assumed by Turcotte, Phillips, and Murrell." This statement essentially concedes that the officers' belief was reasonable, even if mistaken. *See Meadows v. City of Walker*, 46 F.4th 416, 424 (6th Cir. 2022) ("[I]f from the officers' perspective [the suspect] could be seen as possibly engaged in active resistance, then qualified immunity would presumably be warranted, and this

- 10 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

would be true even if the officer was not entirely sure."). Moreover, "[t]he essence of qualified immunity . . . is to give government officials cover when they resolve close calls." *Hagans*, 695 F.3d at 511. This counsels in favor of applying the defense even if, as Plaintiffs assert, Marr's actions did not present a "clear-cut" case of resistance.

Plaintiffs next contend that even if the officers were permitted to tase Marr because he resisted arrest, they violated his clearly established rights by doing so too many times. We agree that "the gratuitous or excessive use of a taser violates a clearly established constitutional right." *Chrestman ex rel. Wooden v. Metro. Gov't of Nashville & Davidson County*, 156 F.4th 694, 706 (6th Cir. 2025) (quoting *Goodwin v. City of Painesville*, 781 F.3d 314, 327 (6th Cir. 2015)). But Plaintiffs have not carried their burden of establishing that Officer Turcotte's tasing of Marr 8 to 11 times was gratuitous or excessive. Rather, our precedents—which Plaintiffs make no attempt to distinguish—have applied qualified immunity in situations involving a similar or greater number of taser discharges. *See, e.g.*, *Hagans,* 695 F.3d at 507, 511 (granting qualified immunity where an officer tased a suspect four to six times); *Sheffey v. City of Covington*, 564 F. App'x 783, 785, 787 (6th Cir. 2014) (granting qualified immunity where officers tased a suspect 12 times); *Williams v. Sandel*, 433 F. App'x 353, 362–63 (6th Cir. 2011) (granting qualified immunity where officers tased the plaintiff 37 times).

Plaintiffs also argue that the officers violated clearly established law by failing to take into account Marr's diminished capacity that was caused by his methamphetamine intoxication, allegedly in contravention of "[Glasgow Police] Department policy and procedure." We note, however, that although an officer's adherence to "'police procedures is certainly relevant to the question of reasonableness in excessive force cases' . . . [,] a violation of department policy is not per se evidence of a constitutional violation." *Guptill v. City of Chattanooga*, 160 F.4th 768, 780

- 11 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

(6th Cir. 2025) (quoting *Mullins v. Cyranek*, 805 F.3d 760, 768 (6th Cir. 2015)).  Plaintiffs are nevertheless correct that "clearly established law" requires officers "to take into account 'the diminished capacity of an unarmed detainee . . . when assessing the amount of force exerted.'" *Martin v. City of Broadview Heights*, 712 F.3d 951, 962 (6th Cir. 2013) (quoting *Champion*, 380 F.3d at 904).

But the extent to which that principle applies here is questionable, given that Marr himself informed the officers that he was in possession of a knife.  More importantly, a suspect's diminished capacity "d[oes] not bar [officers] from using the force required to get control of him and end his resistance—even if that resistance sprang from his delusions." *Helms ex rel. Helms v. Boyd Cnty. Sheriff's Dep't*, No. 24-5853, 2025 WL 1693827, at *6 (6th Cir. June 17, 2025).  Our caselaw—which Plaintiffs again fail to counter—has thus routinely granted qualified immunity when officers use similar force as here to subdue diminished-capacity individuals who resist arrest. *See, e.g.*, *Hagans*, 695 F.3d at 510 (granting qualified immunity where officers tased a man "strung-out on drugs who was thrashing about"); *Caie v. W. Bloomfield Twp.*, 485 F. App'x 92, 94, 96–97 (6th Cir. 2012) (granting qualified immunity where officers tased an "intoxicated and suicidal" man after he "flail[ed] his arms violently" and "actively resist[ed their] attempts to secure his arms behind his back"); *Roell*, 870 F.3d at 482–83 (granting qualified immunity where officers used force against a man who "was suffering from some sort of mental illness" by "physically restraining his limbs, wrestling with him, attempting to tase him, and shackling his arms and legs" after he "actively resist[ed] arrest"); *Sheffey*, 564 F. App'x at 795–96 (granting qualified immunity where officers tased a mentally ill man 12 times because he was armed and "violently physically resisted arrest").

- 12 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

Finally, Plaintiffs argue that, in any event, "gaps or uncertainties" in the officers' bodycam footage raise material factual disputes that preclude applying qualified immunity at the summary-judgment stage. They specifically point to a "brief period" during which the only camera recording the incident—Officer Turcotte's bodycam—was obscured or unclear. Because limited video was recorded during this interval, and because "any relevant gaps or uncertainties left by the videos" must be viewed "in the light most favorable to" Plaintiffs, *LaPlante*, 30 F.4th at 578 (quoting *Latits*, 878 F.3d at 544), they assert that there is a "contested issue of fact" regarding "whether Defendants took some action that exacerbated Mr. Marr's mental health crisis and/or his ability to breathe."

This argument fundamentally misunderstands Plaintiffs' burden. As the nonmovant on summary judgment, Plaintiffs bear the burden of identifying "specific facts" that defeat Defendants' motion. *See Marshall*, 854 F.3d at 381 (quoting *Laster*, 746 F.3d at 726). Plaintiffs likewise bear the burden of demonstrating that qualified immunity is inappropriate. *See Quigley*, 707 F.3d at 681. This means that they must present evidence that "would reasonably support a jury's finding" that the officers took some action during those moments without video footage that would prevent us from applying qualified immunity. *See DiLuzio v. Village of Yorkville*, 796 F.3d 604, 609 (6th Cir. 2015). Yet Plaintiffs make no attempt to cite any evidence supporting this proposition; they instead simply speculate that something "could" or "might" have happened. Our caselaw makes clear, however, that "a party may not avoid summary judgment by resorting to 'speculation, conjecture, or fantasy.'" *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 823 (6th Cir. 2018) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

- 13 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

In sum, Plaintiffs have failed to identify any clearly established right that Officers Murrell, Phillips, or Turcotte violated when they detained Marr on April 14, 2020. These officers are therefore entitled to qualified immunity on Plaintiffs' § 1983 excessive-force claim.

**C.      The City is entitled to summary judgment on Plaintiffs' § 1983 claim**

Having determined that the individual officers are entitled to qualified immunity, we turn next to the question of whether Plaintiffs can hold the City liable under § 1983. The City is a municipal entity located in Kentucky. "A plaintiff raising a municipal liability claim under § 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). This can be done "by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.*

Here, Plaintiffs' § 1983 claim against the City is based on its alleged failure to "adequately hire, train, and supervise the individual officers." For "the inadequacy of police training [to] serve as the basis for § 1983 liability," Plaintiffs must show that "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). But "a municipal policymaker cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Chrestman*, 156 F.4th at 708 (emphasis in original) (quoting *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994 (6th Cir. 2017)).

- 14 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

Because we have determined that the officers did not violate Marr's clearly established rights, it follows that the City's alleged failure to train them could not have constituted "deliberate indifference" sufficient to sustain municipal liability. Accordingly, Plaintiffs' § 1983 claim against the City also fails.

### D.   Defendants are entitled to summary judgment on Plaintiffs' remaining Kentucky state-law claims

This leaves Plaintiffs' state-law claims. As an initial matter, although Plaintiffs' opening brief makes passing reference to their claims against the officers for battery, negligence, wrongful death, and loss of consortium, they present no specific arguments as to any of these claims. Any challenge to the district court's grant of summary judgment on these claims is therefore waived. *See United States v. Bankston*, 820 F.3d 215, 234 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Sandridge,* 385 F.3d 1032, 1035–36 (6th Cir. 2004)).

The only state-law claims that Plaintiffs specifically discuss are their claims against the City for vicarious liability and for negligent hiring, retention, supervision, and training. With respect to vicarious liability, which is "sometimes referred to as the doctrine of respondeat superior," liability "is not predicated upon a tortious act of the employer but upon the imputation to the employer of a tortious act of the employee." *Am. Gen. Life & Acc. Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002). An employer cannot be vicariously liable, however, if its employees commit no tortious acts because "vicarious liability is not possible without primary liability." *Haugh v. City of Louisville*, 242 S.W.3d 683, 687 (Ky. Ct. App. 2007) (citing *City of Louisville v. Bergel*, 610 S.W.2d 292, 293 (Ky. 1980)). Here, Plaintiffs have waived all their state-law tort claims against the individual officers, so no tort claims remain against any City employee. Plaintiffs thus have no claim against the City based on vicarious liability.

- 15 -

No. 25-5662, *Estate of Marr v. City of Glasgow*

As for Plaintiffs' claim for negligent hiring, retention, supervision, and training, "the plaintiff must allege that the defendant knew or had reason to know of the employee's harmful propensities; that the employee injured the plaintiff; and that the hiring, supervision, or retention of such an employee proximately caused the plaintiff's injuries." *Grand Aerie Fraternal Ord. of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005) (quoting 27 Am. Jur. 2d *Employment Relationship* § 401 (2004)). Again, however, Plaintiffs have waived their state-law tort claims against the individual officers, which insulates the City from this particular claim. *See Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 727 (Ky. 2009) ("In order for [an] employer to be held liable for negligent hiring [or] retention . . . [,] the employee must have committed a tort." (quoting *Mulhern v. City of Scottsdale*, 165 Ariz. 395, 398 (Ct. App. 1990))). And even if these state-law tort claims were not waived, Plaintiffs have made no attempt to satisfy another key element of their negligent-supervision claim—namely, to show that the City knew or should have known that the specific officers involved in Marr's arrest would cause him harm. The City is therefore entitled to summary judgment on Plaintiffs' negligent-supervision claim as well.

**E.    The district court did not abuse its discretion in denying Plaintiffs' motion to alter, amend, or vacate the summary-judgment decision**

Finally, Plaintiffs challenge the district court's denial of their motion to alter, amend, or vacate the summary-judgment decision under Rule 59(e) of the Federal Rules of Civil Procedure. "In this circuit, a district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Nolfi v. Ohio Ky. Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012) (citing *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). District courts have "considerable discretion" in deciding whether to grant Rule 59(e)

No. 25-5662, *Estate of Marr v. City of Glasgow*

motions, and we review such decisions under the abuse-of-discretion standard.  *Leisure Caviar*, 616 F.3d at 615.

Plaintiffs' sole Rule 59(e) argument is that the district court failed to consider that manifest injustice would result from the grant of summary judgment in favor of Defendants.  Yet Plaintiffs fail to establish that manifest injustice has occurred in this case.  They contend that the summary-judgment decision is unjust because it relies primarily on the officers' incomplete bodycam footage.  But this contention merely echoes Plaintiffs' original argument in opposition to Defendants' summary-judgment motion, which we have already rejected.  *See Mich. Flyer LLC v. Wayne Cnty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017) ("A motion under Rule 59(e) is not an opportunity to re-argue a case." (quoting *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998))).  Because Plaintiffs fail to show that the grant of summary judgment in Defendants' favor was manifestly unjust, the district court did not abuse its discretion in denying Plaintiffs' Rule 59(e) motion.

### III.    CONCLUSION

The death of Jeremy Marr, who leaves behind a devoted wife and daughter, is an immense tragedy.  But Plaintiffs have failed to show that Defendants should be held liable for his death under either federal or state law.  For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 25-5662

Estate of Jeremy MARR, by and through Joanna Marr, its
Administrator; JOANNA MARR, individually and on behalf
of E.J.M., a minor,

      Plaintiffs - Appellants,

      v.

CITY OF GLASGOW, KENTUCKY; CITY OF GLASGOW
POLICE DEPARTMENT; GUY JOSEPH TURCOTTE;
HAYDEN PHILLIPS; CAMERON MURRELL,

      Defendants - Appellees.

---

      **FILED**
      Mar 16, 2026
      KELLY L. STEPHENS, Clerk

---

Before:  GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_

_____

Kelly L. Stephens, Clerk